*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

THEODORE CADWELL and GLENN QUAKER,

        Plaintiffs-Appellants,

v

CITY OF HIGHLAND PARK,

        Defendant-Appellee.

UNPUBLISHED
June 11, 2020

No. 346886
Wayne Circuit Court
LC No. 10-012583-NO

Before:  M. J. KELLY, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiffs, Theodore Cadwell and Glenn Quaker, appeal as of right the trial court's order awarding plaintiffs' counsel attorney fees in the amount of $10,000and costs in the amount of $500.  We affirm.

This matter has a long and tortuous history.  The basic facts were set forth in one of this Court's prior opinions as follows:

> Cadwell and Quaker were formerly employed by Highland Park as its chief of police and deputy chief of police, respectively. In October 2010, they filed a complaint against Highland Park, which was later amended to add a claim that they were retaliated against in violation of the WPA [Whistleblowers' Protection Act] and their employment agreements.  The matter proceeded to a jury trial, and the jury found for Cadwell and Quaker on their contract claims and their claims under the WPA.  The jury awarded Cadwell and Quaker $760,680 each, which included $500,000 each in damages for emotional distress. On May 14, 2013, the trial court entered a judgment awarding Cadwell and Quaker each $760,680, plus costs and $47,695.60 in attorney fees.

> Highland Park appealed in this Court, which affirmed the jury's verdict but concluded that the award of emotional distress damages was unsupported by the evidence, so remittitur was warranted under MCR 2.611(E).  *Cadwell v Highland Park*, unpublished per curiam opinion of the Court of Appeals, issued May 28, 2015 (Docket No. 318430), p. 7. On remand, Cadwell and Quaker accepted the reduced

award, and the trial court entered a remittitur judgment stating that the judgment amount, all costs, and all attorney fees "shall earn and bear interest at the applicable statutory rate pursuant to MCL § 600.6013(8)[.]

\*\*\*

Thereafter, Highland Park filed an application for leave to appeal the [trial court's] January 2017 order regarding interest on the judgment, and in a peremptory order, this Court reversed and remanded for recalculation of the amount of interest due. *Cadwell v Highland Park*, unpublished order of the Court of Appeals, entered March 20, 2017 (Docket No. 336969). [*Cadwell v City of Highland Park*, 324 Mich App 642, 645-647; 922 NW2d 639 (2018)]

Cadwell and Quaker ("plaintiffs") then moved for additional attorney fees and costs for the efforts their lawyer had expended to enforce and collect on the remittitur judgment. Ultimately, plaintiffs sought a total of $59,660 for posttrial attorney fees. Despite defendant's objections, the trial court did not hold an evidentiary hearing on the matter, but, in an April 21, 2017 order, awarded plaintiffs' attorney fees of $29,760, representing 148.8 hours at $200 an hour. Defendant, then appealed the trial court order awarding postjudgment attorney fees to plaintiffs (Docket No. 338070).

At the same time, the parties continued to litigate in the trial court the proper method in which to calculate interest on the remittitur judgment. The trial court ultimately entered an order setting the judgment and interest amount in an October 19, 2017 order. Plaintiffs appealed that order to this Court, by leave granted. *Cadwell v Highland Park*, unpublished order of the Court of Appeals, entered April 20, 2018 (Docket No. 341026).

Next, plaintiffs filed a second motion seeking additional postjudgment attorney fees and costs for those fees and costs expended to collect on the remittitur judgment since April 4, 2017, because the prior award of postjudgment fees and costs covered only the period from May 28, 2015 through March 5, 2017. The trial court denied this motion in a November 14, 2017 order. Plaintiffs appealed that order as of right (Docket No. 341284). This Court consolidated Docket No.'s 341026 and 341248. Before those consolidated appeals were decided, however, this Court issued its opinion in Docket No. 338070, addressing the trial court's April 21, 2017 order, that awarded plaintiffs' attorney fees of $29,760 (representing 148.8 hours at $200 an hour). *Cadwell*, 324 Mich App 642.

In *Cadwell*, 324 Mich App 642, this Court concluded that "a plaintiff prevailing on an action filed under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., may recover postjudgment attorney fees under MCL 15.364." *Id*. at 645. However, this Court vacated the court's order awarding postjudgment attorney fees and remanded for further proceedings because "the trial court failed to properly evaluate whether the requested attorney fees were reasonable and appropriate." *Id*. This Court also noted that "although appellate attorney fees are recoverable under MCL 15.364, plaintiffs only sought recovery of trial-level postjudgment attorney fees." *Id*. at 657 n 3.

On remand, plaintiffs filed a motion for the imposition of additional attorney fees. In this, plaintiffs' third motion for attorney fees, they specifically sought appellate attorney fees concerning all appeals filed in this matter, in the amount of $74,960.00. On November 6, 2018, the trial court held an evidentiary hearing with respect to the appropriate amount of attorney fees to award plaintiffs pursuant to this Court's prior opinion and remand, *Cadwell*, 324 Mich App 642, and addressing plaintiff's third motion for attorney fees. At the conclusion to the evidentiary hearing, the trial court entered an order on November 26, 2018, holding that the reasonable hourly rate for plaintiff's attorney was $200 and that the attorney was allowed 50 hours of billable time. The trial court thus awarded plaintiffs "a total award of attorney fees (50 hours @ $200 per hour) and costs ($500.00) [of] $10,500.00."

Thereafter, this Court issued its opinion in the consolidated appeals addressing the October 19, 2017 order setting the judgment and interest (Docket No. 341026) and the trial court's November 14, 2017, denial of plaintiff's second motion seeking additional postjudgment attorney fees and costs expended to collect on the remittitur judgment since April 4, 2017 (Docket No. 341284). Relevant to the instant matter, this Court held that the trial court's denial of plaintiff's second motion for attorney fees, "solely because it believed that the fees were for 'subsequent judgment activity' that was 'not relevant and pertinent to this Whistleblower's Act' " was in error, as "[t]he mere fact that the fees were incurred for postjudgment activity does not make the attorney fees unrelated to the WPA claim, nor does that fact standing alone prohibit plaintiffs from recovering these attorney fees." *Cadwell v City of Highland Park*, unpublished opinion of the Court of Appeals, issued February, 19, 2019 (Docket No. 341026) p 8, citing *Cadwell*, 324 Mich App at 645, 652. This Court thus reversed "the trial court's ruling on this issue and remand[ed] this matter for the trial court to evaluate under the proper legal framework the reasonableness of the additional postjudgment attorney fees sought by plaintiffs. On remand, the trial court should properly apply the framework outlined in *Cadwell* [] in making this determination." *Id*.

Now, plaintiffs appeal as of right the trial court's November 26, 2018 order in which it held that plaintiffs were entitled to "a total award of attorney fees (50 hours @ $200 per hour) and costs ($500.00) [of] $10,500.00."

Plaintiffs first argue that defendant did not raise the issue of the reasonableness of the number of attorney hours for which they were entitled to fees before the trial court until after this Court issued its opinion in *Cadwell*, 324 Mich App 642 and that the trial court should not have entertained this unpreserved issue. Plaintiffs further contend that this Court only remanded this matter to the trial court for a re-determination of the reasonableness of the hourly rate—not the number of attorney hours, such that defendant may not challenge the number of attorney hours for the first time now. We disagree.

"[T]he decision to award attorney fees under the WPA is reviewed on appeal for an abuse of discretion." *O'Neill v Home IV Care, Inc*, 249 Mich App 606, 612; 643 NW2d 600 (2002). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Jilek v Stockson*, 297 Mich App 663, 665; 825 NW2d 358 (2012).

MCL 15.364 permits a court to award a plaintiff in an action under the WPA "reasonable attorney fees" if the court concludes "that the award is appropriate." See also *Cadwell*, 324 Mich App at 649. MCL 15.363(1) additionally authorizes civil actions for "actual damages" based on

alleged violations of the WPA, and MCL 15.363(3) provides that such damages mean "damages for injury or loss caused by each violation of this act, including reasonable attorney fees." In *Cadwell*, supra, this Court held that postjudgment attorney fees were recoverable pursuant to MCL 15.364 by a prevailing plaintiff under the WPA. *Id.* at 645. We stated that a "plaintiff who prevails on a WPA claim but then must engage in postjudgment legal proceedings in order to collect on his or her judgment is still prosecuting an action brought pursuant to the WPA." *Id.* at 652.

Our Supreme Court has set forth a specific formula for trial courts to apply when determining a reasonable attorney fee award. First, "a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services." *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 281; 884 NW2d 257 (2016). Next, the court must multiply that rate "by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. Thereafter, the trial court must consider all of the remaining factors set forth in *Wood v Detroit Auto Inter–Ins Exch*,413 Mich 573, 588; 321 NW2d 653 (1982) and Michigan Rule of Professional Conduct (MRPC) 1.5(a) "to determine whether an up or down adjustment is appropriate." *Pirgu*, 499 Mich at 281. Those factors are:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [Id. at 282]

The above factors are not exclusive, and the trial courts may consider any additional relevant factors. *Wood*, 413 Mich at 588. "[T]he burden of proving the reasonableness of the requested fees rests with the party requesting them. *Smith v Khouri*, 481 Mich 519, 528–29; 751 NW2d 472 (2008).

At the October 12, 2018 hearing concerning plaintiffs' motion for attorney fees, held after remand, defendant's counsel noted that this Court had remanded the matter back to the trial court to determine "the reasonableness of fees, and that is two parts. One has to do with the rate and the second part has to do with the number of hours. And the . . . burden is on the Plaintiff to establish that." The trial court opined, "[T]he fact of matter remains is they sent this back down for the Court to make a thorough analysis and this Court finds that, in order to make a thorough analysis, that the Court does need to consider some concrete information in assessing what the appropriate

attorney fees are . . . ." The trial court also noted that it generally holds evidentiary hearings with respect to attorney hours and the reasonableness of those requested and that it did not do so previously in this case, which essentially led to the remand order from this Court.

Plaintiffs' counsel disagreed with the trial court's interpretation of this Court's remand order and the need for an evidentiary hearing. Counsel stated, "148.8 hours, I submit, was the law of this case. That was the number that's endorsed by the Court of Appeals and the Court, in fact, endorsed that number as being substantially less [than] the amount of hours that were put in the case post judgment . . . ." Plaintiff's counsel opined that this Court remanded the case only because of and to calculate an appropriate reasonable hourly attorney rate. The trial court nonetheless held an evidentiary hearing on all aspects of the attorney fee request.

The trial court did not err in addressing the reasonable number of attorney hours at the evidentiary hearing. Notably, the primary issue set forth for our resolution in *Cadwell* was whether, as defendant contended, "the trial court erred by granting postjudgment attorney fees to Cadwell and Quaker." *Id*., 324 Mich App at 649. After devoting the majority of our analysis to that issue, and holding that it did not, we then addressed defendant's next argument that "even if postjudgment attorney fees are recoverable under the WPA, the trial court's award of attorney fees was not reasonable." *Id*. at 655. This Court did not explicitly address whether the number of hours awarded by the trial court was reasonable. Instead, we undertook the review of the award of attorney fees from the first step as stated in *Pirgu*, 499 Mich at 281—"determining the reasonable hourly rate customarily charged in the locality for similar services." We determined that the trial court did not "rely on any evidence showing that $200 per hour was the 'market rate' that 'lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.' " *Cadwell*, 324 Mich App at 656-657. The trial court's failure to undertake a proper analysis at the very first step of *Pirgu* necessitated a remand for the appropriate determination of attorney fees. Thus, this Court merely noted that "the trial court apparently determined that . . . 148.8 hours were the reasonable number of hours expended," without making any determination as to whether or not the number of hours claimed by counsel were, in fact, reasonable.

This Court further determined that the trial court abused its discretion by failing to address each of the reasonableness factors set forth in *Pirgu*, id. at 657-658. This Court ultimately vacated the court's order "awarding postjudgment attorney fees and remand to the trial court for reconsideration in light of this opinion." *Id*. at 658. This general remand to the trial court for reconsideration did not limit the trial court in its analysis of the attorney fee award in any respect. As the trial court noted in delivering its opinion on remand, this Court vacated the prior award of attorney fees and remanded to the trial court to make findings on the record relative to the attorney fees hours and attorney fees in general.

Given that the very first step in a reasonableness analysis is the hourly rate and this Court found that the trial court abused its discretion in finding $200 per hour to be a reasonable hourly rate, the reasonableness analysis by the trial court was flawed from the very beginning. On remand, then, plaintiffs still bore the burden of proving the reasonableness of the requested fees, *Smith*, 481 Mich at 528–29, in all aspects and the trial court could undertake an analysis of the reasonableness of the attorney fees requested anew. Plaintiffs have provided no authority to support their argument otherwise. Plaintiffs have also provided no support for their apparent

-5-

argument that the trial court was prohibited from amending its prior award concerning the number of hours awardable.

Plaintiffs next argue that the trial court abused its discretion by reducing the attorney fee hours to 50 hours. In order for a trial court to determine the reasonable number of hours expended by each attorney,

> the fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support. If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence. [*Smith*, 481 Mich at 532]

At the November 6, 2018 evidentiary hearing, plaintiffs presented David Christiansen, of Charfoos and Christiansen, PC, as a witness to testify concerning attorney fees.[1] Christiansen testified that he has been a practicing attorney for 45 years, with his focus being primarily on trial work on behalf of plaintiffs in medical malpractice actions. Christiansen testified that he has been involved in attorney fee disputes, both for his own firm and by submitting affidavits as an expert for other attorneys. Christiansen testified that he is familiar with the rates customarily charged by Wayne County attorneys for legal services similar to those performed by plaintiffs' counsel in this matter.

Christiansen testified that he knew plaintiffs' counsel through a professional relationship for approximately 35 years and they had worked on cases together in the past. He reviewed relevant documents to prepare to testify. When asked by plaintiffs' counsel if Christiansen had any issue with the number of hours plaintiff's counsel was requesting, Christiansen responded:

> I really couldn't evaluate that. I can't —— I can't speak to that. I take —— take it at your word that those are the hours that you, you know, that you worked and it sounds like it —— I mean, that — I'm not an expert in evaluating the hours. I take you —— take you at your word that those were the hours that -- that you worked.

Christiansen did, however, opine that $400 per hour was a reasonable rate request considering counsel's experience, that he won an award in his client's favor, the difficulty of these types of cases, and his loyalty to his client in dealing with 10 appeals even though he was working on a contingency basis.

Defendant called Byron Gallagher, Jr., as an expert witness concerning attorney fees. He has been a practicing attorney for approximately 30 years and owns his own six-attorney law firm. He has testified in court and at depositions concerning the reasonableness of attorney fees for other attorneys and has reviewed and negotiated attorney fee disputes for the past 15 years. Gallagher

---

[1] The trial court declined to qualify Christiansen as an expert, but allowed him to testify as a witness and indicted that it would determine the weight it would place on his testimony.

reviewed documents and records in this matter and reviewed relevant case law and the Michigan Rules of Professional Conduct to prepare a written opinion as to the appropriate hourly rate and number of hours requested by plaintiffs. Gallagher testified that based on his evaluation, and considering that plaintiffs' counsel office was out of his home, the reasonable hourly rate for plaintiffs' counsel would be $200 per hour. Gallagher testified that plaintiffs' counsel was suspended from the practice of law for a 60-day period during the case and that he has no idea what the credentials of substitute counsel were and plaintiffs provided none, so plaintiffs' counsel did not meet his burden of establishing entitlement to attorney fees for the time period in which substitute counsel was performing. Gallagher also testified that he also took into consideration the fact that on appeal, the award plaintiffs obtained at trial was reduced by 2/3, that the billings submitted by plaintiffs' counsel were general rather than specific and itemized, and that counsel had requested legal hourly rates for clerical work such as filing a motion. Gallagher opined that $22,414 would be a reasonable total attorney fee to award plaintiffs' counsel.

The trial court delivered its opinion orally on November 12, 2018, awarding counsel 50 hours of services at $200 per hour, for a total of $10,000. The court indicated that plaintiffs' counsel worked on the underlying matter on a contingency fee basis and, because it was a WPA case, was additionally awarded attorney fees in a May 4, 2016 order in the amount of $46,695.60. Defendant did not object to that award and it is still valid. The trial court stated that the only issue before it was for postjudgment attorney fees that were not subject to any contingency fee agreement. The court indicated that it reviewed the 2017 Economics of Law Practice Attorney Income and Billing Rate Report, and then considered the factors set forth in *Pirgu*, 499 Mich 269. The court noted that it was plaintiffs' burden to support their request and that because there was no clear evidence as to specifically where counsel's office was located, and considering other factors, it would use the 2017 Economics of Law Practice Attorney Income and Billing Rate Report for a sole practitioner working out of home rate of $200 an hour.

We find no error in the trial court's finding that $200 per hour was a reasonable hourly rate in which to begin its calculation. While plaintiffs' counsel indicated that he had an office in a downtown Detroit building necessitating the use of a higher rate from the 2017 Economics of Law Practice Attorney Income and Billing Rate Report, he provided no proof of that claim. And, according to the trial court, counsel's business address was listed in the Michigan Bar Journal as his home address. And, the Economics of Law Practice Attorney Income and Billing Rate Summary Report provides some reliable empirical evidence of market rates. *Adair v Michigan (On Fourth Remand)*, 301 Mich App 547, 558; 836 NW2d 742 (2013).

With respect to the number of hours requested, the trial court noted that plaintiffs' witness, Christiansen, testified that he could not provide an opinion concerning the reasonableness of the amount of hours counsel sought payment for and simply took counsel at his word concerning the hours. Defendant's expert witness, Gallagher, on the other hand, pointed out that the submitted billings do not contain detail or substance to support plaintiffs' counsel's requested fees, so he reduced the hours sought by 1/3 to address the lack of information. He also opined that counsel could not collect fees for the work of substitute counsel or for clerical work that counsel performed. The trial court then went through a line-by-line analysis (off the record) of the billing hours submitted by plaintiffs' counsel and concluded that some were allowed and some were not allowed due to lack of specificity and explanation or because they were for clerical work.

As stated in *Smith*, 481 Mich at 532, "[t]he fee applicant must submit *detailed* billing records, which the court must examine and opposing parties may contest for reasonableness. The fee applicant bears the burden of supporting its claimed hours with evidentiary support" (emphasis added). Thus, the trial court could properly exclude billings that were not detailed. At the evidentiary hearing, defendant's expert witness, Gallagher, testified that the billings submitted by plaintiffs' counsel contained many one or two-word descriptions for services that did not provide any information in which to determine if the hours claimed were reasonable. Our review of the billings submitted by plaintiffs' counsel lead to the same conclusion. For example, an entry for April 11, 2016, lists "Drafted Motion Order" and a time of one hour. There is no indication of what motion or order counsel is referencing, which makes it all but impossible to determine whether one hour was a reasonable amount of time to spend on that task. Similarly, an entry for April 25, 2016, lists "Drafted Order" as a task that required .4 hours. Without further explanation of at least the subject of the order, one cannot determine whether this time was reasonable.

Further, MCR 2.626 permits an award of attorney fees to include an award for "the time and labor of any legal assistant who contributed nonclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria set forth in Article 1, § 6 of the Bylaws of the State Bar of Michigan." However, this rule provides *permission* for such an award, not a requirement. More importantly, the rule specifically applies only to nonclerical work. Plaintiffs have provided no support for a contention that an attorney, himself, may collect an attorney fee for the performance of clerical work when he could not seek compensation for the same service performed under his supervision by another.

The trial court also thoroughly addressed the factors set forth in *Pirgu*, 499 Mich at 282. The trial court took into consideration counsel's experience and opined that the postjudgment issues were very basic and dealt primarily with the collection of the judgment. The trial court stated that it would not be awarding counsel the fees requested for the work done by substitute counsel during plaintiffs' counsel's suspension, because substitute counsel had not requested his own attorney fees, and because plaintiffs' counsel had provided no information concerning the qualifications or experience of substitute counsel. It also considered that plaintiffs' counsel was only partially successful in that the award obtained in the trial court was ultimately reduced by 2/3, and that a significant amount of posttrial work concerned the amount of interest to be awarded on the judgment and defendant ultimately prevailed on the interest rate issues. The trial court indicated that it would not be awarding attorney fees dating from 2012, as requested by plaintiffs' counsel, because counsel had been awarded attorney fees on the remittitur judgment on May 14, 2016, and because the fee request submitted to the Court of Appeals addressed only March 2016 through March 2017.

In sum, it was only after an evidentiary hearing and lengthy analysis of the *Pirgu*, *supra*, factors that the trial court determined that plaintiffs' counsel was entitled to 50 attorney hours at $200.00 per hour. The trial court considered the appropriate factors and determined what weight to give to the witnesses' testimony. Because the trial court complied with this Court's remand directive and its findings and ultimate determination were supported by the record, we find that the trial court did not abuse its discretion in its attorney fee award.

Affirmed.

/s/ Michael J. Kelly
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto